May it please the Court, I represent Appellant Bailey, and I'd like to this morning talk about the first two issues in the briefs, which both revolve around witness Troy Horton, who was the only eyewitness to the events other than appellant. He did not testify at the trial. His testimony came in via a preliminary hearing testimony transcript. He failed to honor a subpoena and was arrested on that, on a bench warrant that resulted from that. He then appeared in court. In a court proceeding that was held in the late afternoon, 15 or 20 minutes after the trial proceedings ended, after appellant was taken back into custody, and after his attorney had left, the only people there were the court and the prosecutor. And the court, notwithstanding the fact that he failed to appear a few days earlier, released him again on his promise to appear. Probably to no great surprise, he didn't appear three days later at trial. And the question revolves as to whether this was a critical stage in the proceedings. It had nothing really to do with, it wasn't adversarial. Well, it would have been adversarial had the one party not been there. Well, not even according, basically, to what counsel said later, which is that she had some difficulty with it, but, you know, this was a hearing, best I could tell, in which the court was dealing with possible contempt against Horton. And what interest did Bailey have in that? Well, I think it was much more than that, Judge Reimer. I think it was ensuring that the man would be there to testify. He had a --- Did the defendant have an interest in having a prosecution witness be there to testify against him? Well, I think he did, because I think with just the cold record of what he said at the preliminary hearing, the jury doesn't have a chance to evaluate this person. Well, you're going to a different issue, though. The question here is, was this a critical stage of the proceeding for the defendant? Well, the Supreme Court case of Mempel v. Wray says that a critical stage of criminal proceedings is any stage where substantive rights of a criminally accused may be affected. And I would suggest his substantive rights to have witnesses that are going to testify against him or going to be introduced against him be there in open court so that they can be examined, so that the jury can see them, can observe them. There's a case of this Court's case of Yida, Y-I-D-A, at page 12 of my reply brief. And I make a quote as to how significant it is to have the jury be able to evaluate a witness instead of just listening to the cold record without realizing his demeanor. And I think that kind of segues into the second issue, which I think is a Barber v. Page issue, that to read the transcript from the preliminary hearing, a witness must be unavailable. And if we look at the record, the prosecutor says, I can't find him. Well, there's no record. The Court doesn't make any inquiry. The Court just simply says, well, okay, we'll use his testimony. Too bad you can't find him. But the point is, the efforts, whatever they may have been, to locate this person were not indicated in the record. This was a person who had been found on a bench warrant, arrested on a bench warrant only a few days before. We don't know whether they went to the location where he had been arrested, to his address or addresses. We don't know if there was any effort made. And I would say that under the Supreme Court law and the law of this Court, there has got to be articulated the efforts that were made to try to locate this person, rather than just for the Court to say, well, he's unavailable, you can use his transcript. I think it was very – he was a very important witness, and I think this is evidenced by the fact that the jury asked to have in the jury room the transcript of his testimony, which was not allowable. Then they asked if they could – if it could be read back, and so a portion of his testimony was read back. So I think that's an indication that he was a very significant witness in the case. If the Court has no more questions on those issues, I'd like to move briefly to the prejudicial ineffective assistance of counsel issue. And that is that the trial counsel, there is no evidence that he made any – she made any attempt to locate, to interview, or to call Corey Butts, who was – had been interviewed several months earlier by telephone by the investigator for the previous attorney for the appellant. And at that time, Butts said, and he would have testified, presumably, to what he said in the interview, which the summary of the telephone interview is page 62 and 63 of the excerpts. He was a crucial witness because, among other things, he would have corroborated the testimony of the appellant and would have added that only one day before the homicide, he, Butts, and the appellant encountered the decedent, and the decedent had a gun, and threatened him. And I think this was very crucial corroborative evidence. Moreover, he would have contradicted the testimony of a prosecution rebuttal witness who said that the decedent was a family man, he'd known him for 25 years, had never seen him with a gun, and I think Butts would have established that the which was important evidence. I suggest that, at minimum, to further establish this ineffective assistance to counsel argument, at minimum, the Court should remand for an evidentiary hearing in the district court. Unless the Court has any further questions, I would reserve the remaining period of time for rebuttal. Thank you. Ms. Haley. Good morning. Juliet Haley, appealing to the appellee. I would just start with Mr. McCabe's last issue on the IAC claim. First of all, he's speculating that counsel wasn't aware of this witness, which is complete speculation. It was the witness was interviewed. Counsel didn't need to interview every single witness. It was interviewed by the investigator. And I think what the most telling part is this notion that there was prejudice, because it's not acknowledging what the defendant's confession was and what his testimony was. And essentially, what Mr. McCabe is saying is that this witness would have corroborated that he was afraid of this, of the victim. But the facts are, under California law, is that you cannot, and what we have pretty undisputed, even by the defendant on every account, is that he got into something with the victim, they had some kind of an argument, the victim said, I'm not, you're a youngster, I'm not going to even fight you. The defendant went off, found somebody who would, I mean, that was what he was threatening with, came back, then they got into it again, he said, okay, let's go down and fight, and as the victim walked out, he pulled out a gun, and the victim turned around. If he was afraid of the victim and shot him, that is not, and that's not a voluntary manslaughter defense argument under California law. So it doesn't matter that he was fearful of the victim. When you set up the situation where you start this process, you have a gun, and you fire, you don't get the defense. You don't get to set it up and say, oh, I was afraid, after I set this whole thing in motion. So that witness, and not only that, that witness then contradicted the defendant's testimony at trial, which he had already changed from his confession, that it was an accidental shooting, that the gun just started going off, which was contradicted by the physical evidence, which is that this was a single shot, single action revolver, you couldn't, it couldn't just jam and just keep going off. And the victim was shot three times. So I think that the notion that he was prejudiced by this, you know, having his cousin not come testify about things that he told him later on was not prejudicial. Going back to the critical stage, I think that, Judge Rummer, you're correct that this wasn't an adversarial process. This was the court determining what consequence it was going to give to enforce its own inherent authority. And under California law, the way that that works is that if there's, if you believe the witness may not come back, you then have them go into a written agreement where they will suffer severe penal consequences. And you do not jail them. Witnesses under the California Constitution, you know, have a right to, just like the bail statute, we don't put people in jail as a matter of first order. This witness showed up at the preliminary hearing. He failed to appear for one court date. And it was quite normal California procedure, as all the State courts found. As the judge himself indicated later on, I would not have held this witness in custody. But this was not an adversarial proceeding. And again, even if, you know, this witness, in the worst-case scenario that this witness, the testimony should not have been admitted, it was harmless. The witness completely, almost identically cumulative to what the defendant testified, I mean, what the defendant's statement to the police were, which is that he, you know, he shot this guy three times. And he says he didn't intend to kill him, even though he was, you know, six feet away from him. But the victim walked away. He pulled out his gun as the victim was walking down the driveway. The victim turned around and he started shooting. And the notion that he was, even the notion that he was terrified or that it was an act of terror testified that she watched him, you know, walk calmly away from the scene and get rid of the gun. So unless there are any questions, I would submit it. Sotomayor, I don't think so. Okay. Sorry. Thank you. Mr. McCabe. McCabe, addressing the arguments in order from the Poison Counsel, clearly a an attorney representing a criminal defendant doesn't have the obligation to interview every witness. But under Ninth Circuit law and Strickland and its progeny, the attorney has an obligation to interview, to make a reasonable investigation. She had or should have had the report from the previous attorney's investigator, which reflected, and that's in the excerpt of the record, as I indicated, that showed that this witness appeared to be prepared to give very valuable testimony, corroborative of the appellant and contradictory to at least one and maybe more prosecution witnesses. That attorney had an obligation, I would suggest, to ensure that that person testified at the trial. And there's no evidence that he was subpoenaed and he certainly did not testify at the trial. He would not have, even if his testimony were absolutely believed, I'm not arguing that that would have produced an acquittal. But if believed, the jury could have returned, could have accepted the defense of unreasonable self-defense, as I indicated in my reply brief, which would have reduced the charges from murder to manslaughter. Very briefly, as to the first couple issues, I don't think that this was a case where there was a decision between jailing the man for three days or releasing him, as the Court did, on a mere promise to appear. I think there were a number of alternatives that I suggested in my briefing that had this attorney been present, the attorney could have and a reasonable attorney would have suggested. They could have jailed him overnight, and then if there was any belief at all that he wouldn't appear, they could have videotaped his testimony. Or they could have set restrictions on his release, such that he phone in or appear in person every day to the court or to the probation office or to some agency. If that had been done, and that is done as a matter of course in releasing defendants, if not, and probably material witnesses, then if the person failed at any time, they could have gone out and looked for him in advance of the date they needed him to try the matter. This was not an adversarial proceeding only because the one, the appellant and his attorney were never notified of it. So it couldn't be an adversarial proceeding. It should have been. They should have been notified. This was only 20 minutes after the court had recessed for the day. The attorney could have been located very quickly, presumably. The appellant was in custody. He was right there. He could have been returned to the court. I would submit the matter with those comments. Thank you. Thank you, Mr. McCain. Thank you. The matter just argued will be submitted.
judges: Trager, Alarcon, Rymer